## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL DAVIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6652** |
| **N. BURL CAIN, WARDEN** | **SECTION: "A"(1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Michael Davis, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On September 27, 2012, he was convicted of second degree murder under Louisiana law.[1]  On December 17, 2012, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On December 19,

---

[1] State Rec., Vol. 5 of 7, transcript of September 27, 2012, p. 96; State Rec., Vol. 2 of 7, minute entry dated September 27, 2012; State Rec., Vol. 2 of 7, jury verdict form.
[2] State Rec., Vol. 5 of 7, transcript of December 17, 2012; State Rec., Vol. 2 of 7, minute entry dated December 17, 2012.

2013, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on September 12, 2014.[4]

On December 4, 2015, petitioner filed the instant federal application seeking habeas corpus relief.[5]  The state has filed a response and does not argue either that the application is untimely or that petitioner failed to exhaust his remedies in the state courts.[6]

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

---

[3] State v. Davis, 131 So.3d 1002 (La. App. 5th Cir. 2013); State Rec., Vol. 2 of 7.
[4] State v. Davis, 147 So.3d 703 (La. 2014); State Rec., Vol. 2 of 7.
[5] Rec. Doc. 1.
[6] Rec. Doc. 8.

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

4

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> In October 2009, Sonora Williams resided on Millender Drive in the Lincolnshire subdivision in Marrero with his mother and siblings.  Around 12:00 p.m. on October 12, 2009, Williams left his residence to walk his girlfriend home to a nearby subdivision.  While walking down Millender Dr., Williams encountered Jerry Davis and Myro Videau, two men with whom he was acquainted from the neighborhood.  The two men stared at Williams, which prompted Williams to reach toward his back pocket, feigning as if he had a gun.  The two men then proceeded to a nearby store.  As Williams continued, he noticed the two men staring at him again, nodding their heads.  Eventually, Williams dropped his girlfriend off and stayed in her neighborhood for the rest of the day, until nightfall.
>
> Later that night, Williams received a call from his girlfriend, telling him that his friend, the victim, was looking for him.  Williams returned to his girlfriend's house where the victim was waiting for him.  Williams and the victim then left and proceeded to Williams' house.  There, they hung out together, playing games and watching television, until they walked to the corner store for beer.  On their way back home from the store, Williams recognized a green car that turned onto Millender Dr.  He feared Jerry Davis, who he had seen earlier that day, was in the car so he told the victim to keep walking.  Davis was not in the car, but it contained four passengers, one of whom Williams recognized as Defendant.  Williams explained that he knew Defendant from around Lincolnshire.
>
> As Williams and the victim continued walking, Defendant exited the car and started shooting, discharging 11 or 12 rounds.  Williams ran.  When he looked back, he saw the victim return fire once or twice.  Williams continued to run when he saw another individual, clad in all black, appear from between two houses and open fire.  Williams stated he could not clearly see the face of the second shooter, but suspected it was Jerry Davis.
>
> Williams made it inside his home, but soon realized the victim was not with him.  He looked out his front window and saw the victim lying on the ground.  Williams called 911 and then ran to his girlfriend's house where he felt safer.  From there, his sister picked him up and brought him to her house.  Williams then called the police, who picked him up and brought him to the detective bureau.
>
> Williams gave two recorded statements to the police and identified Defendant from a photographic lineup as the gunman.  Based on Williams' identification, an arrest warrant was issued for Defendant.
>
> Deputy Steven Dorsey of the Jefferson Parish Sheriff's Office responded to the scene on Millender Dr. at approximately 9:45 p.m. on the night of the shooting.

5

Upon his arrival, Deputy Dorsey observed a lifeless young black male on the ground with a pistol in his right hand. An autopsy revealed the victim sustained a gunshot wound in which a bullet had entered the right side of his back, perforated both his lungs and heart, and exited the left side of his body. There was no stippling, which indicated the weapon was not discharged at close range.

Twelve 40-caliber casings and four projectile fragments were recovered from the scene. It was determined that all 12 casings were fired from the same weapon, believed to be a Glock firearm. One of the four projectile fragments was a .38-caliber projectile consistent with having been fired from a High-Point firearm, and two of the other fragments were consistent with having been fired from a Glock firearm. It was determined that the .9-mm handgun recovered from the victim did not fire the 40-caliber casings, but it could have fired the one .38-caliber projectile.

One month after the shooting, on November 21, 2009, after a standoff with police, Defendant was arrested in Marrero. After being advised of his rights, Defendant gave a recorded statement in which he denied shooting the victim. He explained that on the night of the shooting, he accompanied his friend, Iriemme Windmon, and her teenage son to Burger King and then to a convenience store before proceeding to her house. He stated that while he was at Windmon's house, someone knocked on the door and informed him that the victim had been killed.[7]

## **Petitioner's Claims[8]**

## **Sufficiency of the Evidence**

Petitioner's first claim is that there was insufficient evidence to support his conviction. On

direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09); 15 So.3d 198, 202, writ denied, 09-1305 (La. 2/5/10); 27 So.3d 297. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable

---

[7] State v. Davis, 131 So.3d 1002, 1005-06 (La. App. 5th Cir. 2013); State Rec., Vol. 2 of 7.
[8] This opinion addresses petitioner's claims in a different order than they were listed in his federal application; however, all claims are addressed herein.

doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08); 985 So.2d 234, 240.

In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, 15 So.3d at 202. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04); 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04); 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08); 982 So.2d 146, 153, writ denied, 08-987 (La. 1/30/09), 999 So.2d 745.

Defendant was charged with and convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.[FN2] La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. State v. Seals, 09-1089 (La.App. 5 Cir. 12/29/11); 83 So.3d 285, 306, writ denied, 12-293 (La. 10/26/12); 99 So.3d 53, cert. denied, —— U.S. ——, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013) (citing La. R.S. 14:10(1)). The determination of specific intent is a question of fact. Id., 83 So.3d at 306. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. Id. Further, a specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran, 09-85 (La.App. 5 Cir. 6/23/09); 19 So.3d 497, 508, writ denied, 09-1742 (La. 3/26/10); 29 So.3d 1249.

> [FN2]  Before the commencement of trial, the court indicated that Defendant was being prosecuted pursuant to the specific intent theory of second degree murder.

In the present case, Defendant does not challenge the sufficiency of the evidence as to the elements of second degree murder, but rather challenges the sufficiency of the evidence establishing him as the perpetrator.

In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272 (La.App. 5 Cir. 12/16/08); 3 So.3d 526, 529, writ denied, 09-143 (La. 10/16/09); 19 So.3d 470. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. Positive identification by only one witness is sufficient to support a conviction. Id.

To prove Defendant's identity as the perpetrator of the crime, the State introduced the testimony of Williams, an eyewitness to the victim's murder.

Williams testified that he knew Defendant from the neighborhood and that he saw Defendant exit the car and discharge his weapon eleven or twelve times. Twelve .40-caliber casings, all fired from the same gun, were recovered from the scene. Williams subsequently identified Defendant as the perpetrator from a photographic lineup as well as in open court. We find this evidence sufficiently negates any reasonable probability of misidentification and, thus, the State carried its burden of proving beyond a reasonable doubt that Defendant perpetrated this crime.

Defendant argues that Williams' testimony was insufficient to support the verdict because he was not credible due to the fact that his trial testimony was inconsistent with his prior statements and grand jury testimony. Williams' prior statements and grand jury testimony are not included in the appellate record.[FN3] Nonetheless, we note that it is apparent from Williams' cross-examination that the alleged inconsistencies concerned tangential details. For instance, defense counsel claimed that Williams had testified before the grand jury that the victim had been dropped off at Williams' house, while at trial Williams testified that he and the victim proceeded to his house together. Defense counsel also pointed out that in Williams' statements to the police and in his grand jury testimony, he stated that the green car had been parked on the street for five minutes, but at trial Williams testified that he observed the car turn onto Millender Dr. Further, defense counsel pointed out that Williams acknowledged that his testimony during direct examination was incorrect regarding the number of people in the car. On direct examination, Williams testified that he observed three people inside the car; however, on cross-examination, he amended his testimony in accordance with his statements to the police that there were four people in the car on the night of the shooting.

> [FN3]  While the record indicates Williams gave two recorded statements to the police following the murder, the statements were not introduced into evidence.

Through cross-examination, the jury was made aware of these various inconsistencies; yet, in returning a guilty verdict, the jurors clearly found Williams' trial testimony credible. It is not this Court's function to evaluate the credibility of witnesses. Positive identification by only one witness is sufficient to support a conviction. Viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient for any rational trier of fact to have found Defendant guilty beyond a reasonable doubt.[9]

The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[10]

---

[9] State v. Davis, 131 So.3d 1002, 1006-08 (La. App. 5th Cir. 2013); State Rec., Vol. 2 of 7.
[10] State v. Davis, 147 So.3d 703 (La. 2014); State Rec., Vol. 2 of 7.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the Louisiana Fifth Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact

9

"twice-deferential."   Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).[11]

In the instant case, petitioner's guilt was established at trial through the eyewitness testimony of Sonora Williams, and it is clear that "the testimony of a *single*, *uncorroborated* eyewitness is generally sufficient to support a conviction."   United States v. King, 703 F.2d 119, 125 (5th Cir. 1983) (quotation marks omitted; emphasis added); accord Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); McAfee v. Quarterman, Civ. Action No. G-07-0361, 2008 WL 4415225, at *19 n.3 (S.D. Tex. Sept. 23, 2008), aff'd sub nom. McAfee v. Thaler, 630 F.3d 383 (5th Cir. 2011).

Although petitioner now argues that Williams was not a credible witness, the fact remains that the jurors, as was their right, obviously chose to believe him.   Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL

---

[11] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.   Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, it is clear that when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

**Denial of Motion to View Crime Scene**

Petitioner next claims that his rights were violated by the trial court's denial of the defense motion to allow the jury to view the crime scene in person. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

> [Defendant] argues the trial court erred in denying his motion to view the crime scene. Prior to trial, Defendant filed a "Motion for Jury to View the Scene," under La.C.Cr.P. art. 762(2), and requested that the jury be allowed to view the crime scene because the photographs did not accurately depict the scene. The trial court denied the motion, noting that the scene is likely to have changed over time and may include overgrown vegetation or parked vehicles affecting the lines of sight that were not present at the time of the murder.
>
> Under La.C.Cr.P. art. 762(2), sessions of court may be held at places within the parish other than the courthouse at the discretion of the court to "allow the jury or judge to view the place where the crime or any material part thereof is alleged to have occurred, or to view an object which is admissible in evidence but which is difficult to produce in court." The decision to grant or deny a motion to have the jury view the scene of the crime is within the sound discretion of the trial court, and such a ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Moore, 432 So.2d 209, 216 (La. 1983), cert. denied, 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983).
>
> In State v. Johnson, 294 So.2d 229, 230 (La. 1974), the Louisiana Supreme Court found no error in the trial court's denial of the defendant's motion to view a

11

burglary scene, where photographs and testimony sufficiently conveyed the relevant information.  The supreme court reasoned:  "We see no reason why the orderly progress of a trial should be disrupted in order to have the jury view a particular scene where the same information can be imparted to the jury through the use of photographs and other evidence."  Id.

In the instant case, the jury was presented with numerous photographs, a crime scene sketch, and extensive testimony detailing the scene of the crime.  The photographs in conjunction with the sketch clearly reveal the layout of the scene.  And, although the sketch is not drawn to scale, it indicates the relative locations of evidence as well as distances between the victim's body and several fixed points.  A review of the record and exhibits fails to demonstrate that the relevant information of this crime scene could not be accurately conveyed via the photographs, the sketch, and testimony.  Additionally, it does not appear that a visit to the scene nearly three years after the offense would have been any more informative than reviewing the evidence introduced at trial.  Accordingly, we find no abuse of discretion in the trial court's denial of Defendant's motion.[12]

The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[13]

To the extent that petitioner is now attempting to argue that the state courts misapplied the state law on this issue, that claim simply is not cognizable in this federal court.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quotation marks omitted); accord Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding.  We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).  Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of *state* law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

---

[12] State v. Davis, 131 So.3d 1002, 1010-11 (La. App. 5th Cir. 2013); State Rec., Vol. 2 of 7.
[13] State v. Davis, 147 So.3d 703 (La. 2014); State Rec., Vol. 2 of 7.

Therefore, for the purposes of this proceeding, the only cognizable claim concerning this issue is whether the denial of the motion to allow the jury to visit the crime scene violated petitioner's *federal* constitutional right to due process.  See McCullough v. Filion, 378 F. Supp. 2d 241, 257 (W.D.N.Y. 2005); see also Fowler v. Kelly, No. 95-2527, 1996 WL 521454, at *3 (2nd Cir. Sept. 16, 1996); Wilkinson v. Goldsmith, No. 92-15435, 1993 WL 280186, at *3 (9th Cir. July 23, 1993).  However, for the following reasons, it is clear that this federal right was not violated.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."  Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  "Due process is implicated only for rulings of such a magnitude or so egregious that they render the trial fundamentally unfair.  It offers no authority to federal habeas courts to review the mine run of evidentiary rulings of state trial courts."  Gonzales v. Thaler, 643 F.3d 425, 430 (5th Cir. 2011) (footnotes and quotation marks omitted).  "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted."  Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992) (quotation marks omitted).

Here, there is simply no reason to believe that a visit to the crime scene, some *three years* after the crime, would either have been any more helpful to the jury than the alternative evidence actually presented at trial (i.e. photographs, the crime scene sketch, and testimony) or would have given the jury any cause to doubt that evidence.[14]  Petitioner's suggestion to the contrary is sheer

---

[14] The Court notes that petitioner appears to be most concerned about the fact the crime scene sketch introduced at trial was not to scale, and, in his opinion, an in-person viewing of the crime scene was therefore necessary.  However, as the Louisiana Fifth Circuit Court of Appeal explained on direct appeal, his concern is in fact much ado about nothing:

> We find the sketch at issue is essentially a map or model of the crime scene.  As a computer-generated sketch, it depicts, in miniature form, the relative locations of the physical evidence at the scene.  *And, even though the sketch is not to scale, it specifies distances between several fixed points and evidence.  Further, the jury was made aware that the sketch was not to scale and viewed the*

speculation and falls far short of establishing that there is a reasonable probability that the verdict might have been different if only the jury had been allowed to visit the crime scene in person.  The trial court's ruling, therefore, did not render petitioner's trial "fundamentally unfair," and so this claim necessarily fails.

### Evidentiary Ruling

Petitioner next argues that his rights were violated by the trial court's refusal to allow evidence that the charges against Jerry Davis were nolle prossed.  Jerry Davis was included as a co-defendant in the indictment; however, on August 20, 2012, the prosecutor nolle prossed the charges against him "[r]eserving all rights to reinstate."[15]  The state then filed a motion in limine requesting the court for "a specific instruction to counsel not to ask questions regarding the procedural disposition of Jerry Davis' case."[16]  That motion was granted on September 24, 2012.[17]  The following day, the Louisiana Fifth Circuit Court of Appeal denied petitioner's related writ application challenging that ruling, holding:

> In its complained of ruling, the trial court restrained the defense only from cross-examining the witness Sonora Williams regarding the state's dismissal of the Jerry Davis case.  The trial court did not restrain the Sonora Williams cross-examination as to his identification of both Jerry Davis and defendant, Michael Davis, as the shooter.  While the witness' identification of Jerry Davis as the shooter is relevant, the state's decision to dismiss its case against Jerry Davis is not.  See State v. Weaver, 38,322 (La. App. 2 Cir. 5/12/04), 873 So.2d 909; State v. Spencer, 374 So.2d 1195 (La. 1979); and Garner v. State of Mississippi, 02-00391 (Miss. App. 10/14/02), 856 So.2d 729.[18]

---

> *sketch in conjunction with the photographs of the scene.  Thus, any possible misinterpretations of the sketch were minimized.*

State v. Davis, 131 So.3d 1002, 1012 (La. App. 5th Cir. 2013) (emphasis added); State Rec., Vol. 2 of 7.
[15] State Rec., Vol. 3 of 7, indictment with prosecutor's notations.
[16] State Rec., Vol. 3 of 7, Consolidated Responses to Defense Motions and State Motions in Limine, p. 2.
[17] State Rec., Vol. 3 of 7, minute entry dated September 24, 2012.
[18] State v. Davis, No. 12-K-723 (La. App. 5th Cir. Sept. 25, 2012); State Rec., Vol. 2 of 7.

On September 26, 2012, the Louisiana Supreme Court likewise denied petitioner's related writ application without assigning additional reasons.[19]

Post-trial, petitioner then again raised the claim on direct appeal, and the Louisiana Fifth Circuit Court of Appeal again denied relief, holding:  "In the present case, Defendant does not allege nor does the record reveal any new evidence that indicates this Court's previous ruling was patently erroneous or produced unjust results.  Accordingly, we decline to reconsider our previous ruling."[20]   Thereafter, the Louisiana Supreme Court similarly denied petitioner's related writ application without assigning additional reasons.[21]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  Little v. Johnson, 162 F.3d 855, 862 (5th Cir.1998). Therefore, once again, to the extent that petitioner is arguing that the state courts misapplied *state* law in disallowing this evidence, his claim simply is not reviewable in this federal proceeding.

To the extent that petitioner is instead asserting a claim under *federal* law, he fares no better.  Even if he could show that the evidence was in fact improperly disallowed, which is questionable at best for the reasons explained by the Louisiana Fifth Circuit Court of Appeal, federal habeas relief still would not be warranted.  On the contrary, petitioner again would be entitled to relief only if he could establish that the state court's ruling violated his right to due process.  Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) ("We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a denial of fundamental fairness under the Due Process Clause." (quotation marks omitted)).  Further, with respect to such

---

[19] State v. Davis, 98 So.3d 822 (La. 2012); State Rec., Vol. 2 of 7.
[20] State v. Davis, 131 So.3d 1002, 1009 (La. App. 5th Cir. 2013); State Rec., Vol. 2 of 7.
[21] State v. Davis, 147 So.3d 703 (La. 2014); State Rec., Vol. 2 of 7.

a claim, it is clear that "[a] due process violation arises only when the excluded evidence is a crucial, critical, highly significant factor in the context of the entire trial." Watts v. Quarterman, 244 Fed. App'x 572, 576 (5th Cir. 2007) (quotation marks omitted).

Here, the exclusion of any evidence concerning the prosecutor's decision to dismiss the charge against Jerry Davis did not violate petitioner's right to due process. The fact that the charge was nolle prossed in no way indicated that Jerry Davis (or, by extension, petitioner) was innocent. Rather, as the United States Ninth Circuit Court of Appeals has explained: "The government may decide to charge or not to charge a suspect in an indictment for *a variety of reasons that have nothing to do with his guilt or innocence*, taking into consideration the availability of prosecutorial resources, alternative priorities, the expectation of prosecution by other authorities, or any number of other valid discretionary reasons." United States v. Bingham, 653 F.3d 983, 999 (9th Cir. 2011). Because the evidence in question in no way constituted evidence of petitioner's guilt or innocence, its exclusion cannot be said to have played a crucial, critical, highly significant factor in the trial and the resulting verdict. Therefore, there was no due process violation.

Moreover, *even if* a reviewing court were to reach a contrary conclusion on this issue, it must be noted that habeas corpus relief still would not be warranted. As noted *supra*, a federal court may grant such relief only if a petitioner shows that the state court's decision denying the claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

Here, petitioner cannot show that the state court decision was contrary to or an unreasonable application of United States Supreme Court precedent because the Supreme Court has *never* held that the exclusion of this type of evidence violates the federal Due Process Clause. Obviously, a state court's decision cannot be "contrary to" to Supreme Court precedent where no

16

such precedent exists on the issue.  Similarly, a state court decision cannot be an "unreasonable application of" such nonexistent precedent.  See Wright v. Van Patten, 552 U.S. 120, 126 (2008) (when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law") (quotation marks and brackets omitted).  Therefore, for those reasons alone, the state court decision is entitled to deference and this claim must be denied.

<u>**Denial of Motion for New Trial**</u>

Petitioner's final claim is that the trial court erred in denying petitioner's motion for a new trial based on newly discovered evidence.  On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied this claim, holding:

> In his motion for new trial, Defendant argued he was entitled to a new trial based on the discovery of evidence that corroborated his alibi.  In particular, Defendant asserted that in his statement to police, he stated he was with Iriemme Windmon at a local Burger King at the time of the shooting.  Although the defense investigated this alibi prior to trial, its efforts failed to reveal any corroborating evidence.  Defendant claimed that after trial, defense counsel was approached by a family member who managed to get Ms. Windmon to obtain her bank records, which indicated a charge for Burger King on the day of the shooting.  Defendant argued he was entitled to a new trial based on the discovery of these records.  In support of his motion, Defendant attached the bank records and two sworn affidavits by defense counsel and the defense investigator asserting that Ms. Windmon could not obtain the relevant bank records prior to trial.
>
> The trial court denied the motion for new trial, stating that Ms. Windmon could have been called to testify that she was at the Burger King on the night of the shooting even without the documentation.  The trial court noted that the submitted documents did not indicate the time at which Ms. Windmon made a purchase at Burger King.
>
> Under La.C.Cr.P. art. 851(3), a new trial shall be granted when
>
> [n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

17

In order for a new trial to be granted based on newly discovered evidence, the evidence must have been discovered since the trial; the failure to learn of the evidence at the time of trial was not due to the defendant's lack of diligence; the evidence must be material to the issues at trial; and the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. Bazley, 60 So.3d at 21.

We find Defendant failed to satisfy all the requirements necessary to obtain a new trial based on newly discovered evidence. The record shows Defendant gave his statement to the police on November 12, 2009. He was indicted on February 25, 2010, and trial commenced on September 25, 2012. The State provided the defense with Defendant's statement on August 16, 2010. Thus, the defense had more than two years before trial to investigate Defendant's alibi, including the opportunity to obtain Ms. Windmon's bank statement. Defendant has not offered any reason why he could not obtain a standard bank statement in a span of more than two years. Accordingly, we find Defendant has not demonstrated that his failure to learn of the evidence at the time of trial was not due to his lack of diligence.

Furthermore, we find Defendant has not shown the bank statement is of such a nature that it would probably produce an acquittal in the event of a retrial. The bank statement only reflects that a purchase was made at a Burger King with a debit card in the name of Ms. Windmon on October 12, 2009. The statement does not indicate who made the purchase, the time at which the purchase was made, or that the Burger King was located at such a distance from the scene that Defendant would not have been able to be at the scene at the time of the murder. Thus, we find the probative value of the bank statement to be minimal and probably would not have changed the guilty verdict, especially since Defendant was identified by an eyewitness to the crime as the perpetrator.

Accordingly, we find the trial court did not abuse its discretion in denying Defendant's motion for new trial on the basis of newly discovered evidence.[22]

The Louisiana Supreme Court then likewise denied petitioner's related writ application without assigning additional reasons.[23]

Once again, to the extent that petitioner is claiming that the state courts misapplied state law (specifically, La. Code Crim. P. art. 851), that claim simply is not cognizable in this federal habeas proceeding. Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991). In light of that fact, and because petitioner has not identified and shown how the denial of the motion for new trial violated any right protected by the *federal* constitution, his claim "provides no basis for habeas

---

[22] State v. Davis, 131 So.3d 1002, 1009-10 (La. App. 5th Cir. 2013); State Rec., Vol. 2 of 7.
[23] State v. Davis, 147 So.3d 703 (La. 2014); State Rec., Vol. 2 of 7.

corpus relief."  Id.; accord Bradford v. Cain, Civ. Action No. 07-3885, 2008 WL 4266761, at *9 (E.D. La. Sept. 12, 2008) ("A petitioner's contention that a state trial court abused its discretion by denying his motion for a new trial based on newly discovered evidence is not alone a ground for relief on federal habeas corpus."); Weber v. Cain, Civ. Action No. 06-1055, 2008 WL 3876399, at *13 (E.D. La. Aug. 20, 2008) (Berrigan, J.).

## RECOMMENDATION

It is therefore **RECOMMENDED** the federal application for habeas corpus relief filed by Michael Davis be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this twenty-fourth day of May, 2016.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.